UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEREK IZZO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 14-cv-13607-ADB |
| v. | * | |
| | * | |
| GENESCO, INC. d/b/a/ LIDS, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

March 22, 2016

BURROUGHS, D.J.

Plaintiff Derek Izzo ("Izzo") alleges that in August 2012, he was terminated as manager of Lids' Braintree, Massachusetts store for refusing to admit to his supervisor that he had a substance abuse problem. In this action against Genesco Inc. ("Genesco" or "Defendant") as the owner and operator of Lids, Izzo charges that his termination violated the Americans with Disabilities Act (Count I) and Mass. Gen. Law. Ch. 151B (Count II). Presently before the Court is Genesco's Motion for Summary Judgment. The Court finds that Genesco is entitled to summary judgment on Count II, but not Count I. Therefore, for the reasons stated herein, the Motion is <u>GRANTED IN PART</u>.

I. **Factual and Procedural Background**

   a. **Procedural History**

Izzo filed his Complaint in this action on September 10, 2014. [ECF No. 1]. Genesco answered on January 15, 2015 [ECF No. 10], and the parties conducted discovery through October 31, 2015. [ECF No. 22]. Genesco filed its Motion for Summary Judgment, which included a memorandum of law and statement of undisputed facts, on December 16, 2015. [ECF

Nos. 31-33]. On January 15, 2016, Izzo filed his opposition brief, a response to Genesco's statement of undisputed material facts, and a statement of material facts in dispute. [ECF Nos. 35-37]. Genesco replied on February 5, 2016. [ECF No. 41].

### b. Factual Background

Defendant Genesco owns and operates several retail stores, including Lids, which sells hats and other sports-related memorabilia. [ECF No. 35 ¶ 1.]. Starting in 2006, Izzo was the manager of Lids' Kingston, Massachusetts store. Id. ¶ 4. Izzo was subsequently promoted to a larger store in the Saugus Square One Mall, also in Massachusetts, at which point Matthew Clark became his supervisor. Id. ¶¶ 5, 7. Soon thereafter, Izzo quit because of the commute. Id. ¶ 9. In 2009, Izzo was recruited back to Lids by Clark, initially as manager of the Kingston, Massachusetts store. Id. ¶ 10. He was an exemplary employee and ultimately promoted to successively larger stores, first to Downtown Crossing in Boston and then to one of Lids' largest stores in Elizabeth, New Jersey. Id. ¶¶ 11-15.

Approximately seven months into his new position in New Jersey, at some time in 2011, Izzo told Clark that he had been robbed at gun point and forced to witness his girlfriend be sexually assaulted. Id. ¶ 17. Izzo informed Clark that he no longer felt safe in New Jersey and asked whether he could return to Massachusetts. Id. ¶ 18. Clark helped Izzo transfer to Lids' Hanover, Massachusetts store, and a few months later, Izzo became manager of the Braintree store. Id. ¶¶ 19-20.

In 2012, troubled by the Braintree store's poor performance, Clark visited the store in April, July, and August and raised numerous concerns to Izzo about the store's disappointing sales and poor operations. Id. ¶¶ 27-51. Each time he visited, Clark completed a Store Visit Report to track the store's progress, and each report found numerous aspects of the store's

performance lacking. [ECF Nos. 32-5, 32-6, 32-7]. In the April Store Visit Report, for example, Clark gave the store an overall score of 51.3%, which according to Clark, is equivalent to a grade of F. [ECF No. 32-5; Ex. 32-1 ("Clark Tr.") at 39:22-23]. In August, the store showed slight improvement, and Clark gave the store an overall score of 56.4%, also equivalent an F. [ECF No. 32-7; Clark Tr. at 40:9-10]. After each visit, Clark gave Izzo the opportunity to comment on his evaluation, but Izzo did not dispute any of the findings. [ECF No. 35 ¶¶ 39, 46, 50].

Although there are minor discrepancies in how the parties' describe these visits, both parties agree that in 2012, the Braintree store was not meeting its sale goals and that Clark had found numerous aspects of the store's operations deficient. The parties do, however, dispute aspects of Clark's second August 2012 visit to the Braintree store, which ultimately resulted in Izzo's employment with Lids terminating.

Both parties agree that Clark visited the store on August 24, 2012, to review the store's performance and complete a Store Visit Report. [ECF No. 35 ¶ 47]. They also agree that Clark returned to the store on August 30, 2012, and that he and Izzo went to the mall food court to talk. Id. ¶¶ 55-56. As recounted by Izzo, the short conversation ended with Clark demanding that Izzo admit to a substance abuse problem. [ECF No. 35-2 ("Izzo Tr.") at 57:6-13]. Clark told Izzo that if he did not admit to abusing drugs or alcohol, he would not be allowed back into the store. Id. at 57:15-16. According to Izzo's deposition testimony, "[Clark] said if I didn't confess to having a drug or alcohol addiction, I would not be allowed to return to work. I did not have a drug or alcohol problem, so I was not admitting to something that I was not, and in turn was not allowed to go back to employment." Id. at 63:3-7. "[B]ecause I would not admit to having a substance abuse problem, which I did not have," Izzo explained, he was escorted back to the store to retrieve his cellphone and jacket, and then terminated. Id. at 57:21-24.

3

Genesco offers a different version of events. They contend that Izzo quit, rather than being fired, and that Clark never demanded that Izzo admit to a substance abuse problem. Rather, as recounted by Clark during his deposition, after attempting to have a conversation with Izzo about how he could improve at work, and getting no response, Clark became concerned about Izzo and tried to determine if Izzo was experiencing any personal problems. [Clark Tr. at 62:16-64:23]. He then reminded Izzo, "in an attempt to assist [him] in getting help he might need," that the company had an Employee Assistance Program (EAP) that offered treatment programs for drug or alcohol abuse. [ECF No. 32 at 7; Clark Tr. at 77:16-78:5]. He also offered Izzo a leave of absence. [Clark Tr. at 78:6-7]. After Izzo declined, and again offered no suggestions for improving his work performance, Clark told Izzo that he would need to contact Human Resources to commence more formal discipline. Id. at 69:2-23. At that point, according to Clark, Izzo put down his keys and walked out. Id. at 70:22-71:1.

After Izzo left, Clark says that he returned to the store, told Theresa Pawlendzio, the Assistant Store Manager, that Izzo had resigned, and asked whether she was interested in becoming the Store Manager. Id. at 72:16-73:4. Later, as Clark left the mall that evening, he visited the other Lids store located in the mall, and similarly told Paul Wentworth, the Store Manager, that Izzo had resigned. Id. at 73:17-74:6. That same day, Clark also contacted Raeanne Quarterson of the Human Resources Department to report that Izzo had resigned. Id. at 74:7-13. The phone log of Clark's conversation with Quarterson reads as follows:

> On 8/30/12 Matt Clark had a conversation with Derek about what was going on in the store and how he's changed over the past year. The conversation turned into how Matt and the company is there to help him if he needs help, since he hasn't been the same person since the incident that happened last year. He offered a LOA and EAP number, but Derek resigned and thanked Matt for taking his time to talk to him.

[ECF No. 32-8].

Clark testified that at the August 30 meeting, Izzo refused his request to memorialize his resignation in writing, so that he could avoid being disqualified for unemployment benefits: "You are resigning? And he said, [y]es. He put his keys down. And I said, don't you want to put that in writing all the time you spent with our company? And to which his response, [n]o, if I do that, I can't collect, which I am assuming he meant can't collect unemployment benefits." [Clark Tr. at 70:24-71:6]. Lids did not contest Izzo's subsequent unemployment claim. [ECF No. 33 ¶ 100].

In January 2013, Izzo filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") alleging that Lids had violated the Americans with Disabilities Act ("ADA") and Mass. Gen. Law. ch. 151B ("Chapter 151B") for firing him based on the erroneous belief that he was addicted to alcohol and drugs. [ECF No. 35-4 at 5-7]. On October 11, 2013, the MCAD issued a probable cause determination. [ECF No. 35-3]. He filed his Complaint in this action in September 2014 again claiming that his termination violated the ADA and Chapter 151B. [ECF No. 1].

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio–Hernandez v. Fortuño–Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively

produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4-5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. North Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

In reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina–Muñoz, 896 F.2d at 8.

## III. DISCUSSION

Discrimination claims under both the ADA and Chapter 151B are evaluated under the three step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005). Step one

requires that the plaintiff establish a *prima facie* case of discrimination. Id. This in itself has three elements, requiring a plaintiff to prove that: (1) he suffers from a disability or handicap, as defined by the ADA or Chapter 151B; (2) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and (3) the defendant took an adverse employment action against him because of, in whole or in part, his protected disability. Id. Under the first element of the *prima facie* case, the plaintiff does not have to show he is actually disabled; being "regarded as" disabled also qualifies an individual for protection under the ADA and Chapter 151B. 42 U.S.C. § 12102(1); see Sullivan v. Neiman Marcus Grp., Inc., 358 F.3d 110, 117 (1st Cir. 2004) (noting that the ADA "protect[s] employees from discrimination based on their employer's mistaken impression that they are disabled"). If the plaintiff is able to establish this *prima facie* case, an inference of discrimination arises and, at step two, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination and to produce credible evidence to show that the reason advanced was the real reason. Tobin, 433 F.3d at 105. Lastly, if the defendant offers a legitimate justification, the burden shifts back to the plaintiff, who, at step three, must show that defendant's proffered non-discriminatory reason was "mere pretext, cloaking discriminatory animus." Id.

Though both the ADA and Chapter 151B use this same general burden-shifting framework, there are relevant differences between state and federal law, and accordingly, the Court will analyze the two counts separately.

    a.   **Count I: Americans With Disabilities Act**

        **1. Step 1: *Prima Facie* Case**

Genesco first contends that it is entitled to summary judgment on Count I because Izzo has not stated a *prima facie* case of discrimination. According to Genesco, Izzo does not suffer

from a disability covered by the ADA and, even assuming he does, it did not take any adverse action against him because of it.

Generally speaking, to satisfy the first prong of the *prima facie* test—establishing that plaintiff suffers from a protected disability—a plaintiff must show that he: (A) has a physical or mental impairment that substantially limits one or more major life activities; (B) has a record of such an impairment; or (C) is regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is "regarded as" disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. 42 U.S.C. § 12102(3).

Because this case involves perceived drug use and/or drug addiction, the Court must also refer to Section 104 of the ADA, which contains a carve-out for current drug users as well as a safe harbor for drug addicts and falsely perceived drug users. Under Section 104, employees "currently engaging in the illegal use of drugs" are expressly excluded from protection under the ADA, where an employer acts on the basis of such use. 42 U.S.C. § 12114(a). Under the same section, recovered or recovering drug addicts and individuals "erroneously regarded as engaging in" illegal drug use are expressly protected. 42 U.S.C. § 12114(b)(1)-(3). As a result, if an employee is terminated for illegal drug use, and he is in fact engaging in such use, he does not qualify as disabled under the ADA. If an employee is not currently engaging in the illegal use of drugs, however, but is erroneously regarded as engaging in such use, then he does qualify for protection under the ADA. See Thompson v. Davis, 295 F.3d 890, 896 (9th Cir. 2002) ("While the term 'qualified individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, the ADA does protect individuals . . . who are erroneously regarded as using drugs when they are not."); Nielsen v. Moroni Feed Co., 162 F.3d 604, 610

(10th Cir. 1998) ("[T]he ADA protects employees who are erroneously regarded as being current illegal drug users.").[1]

Here, Genesco admits that, "accepting Plaintiff's version of the August 30, 2012 meeting as true . . . [Mr. Clark] thought that Mr. Izzo was currently using drugs or alcohol as a means of dealing with the effects of the assault on him and his girlfriend." [ECF No. 41 at 3]. Moreover, Izzo has denied that he was actually using drugs. [Izzo Tr. at 57:19]. Thus, there is a genuine dispute as to whether Clark erroneously perceived Izzo as a current drug user, which satisfies the first element of the *prima facie* case for purposes of the pending motion.[2]

Separately, Genesco argues that Izzo cannot establish a *prima facie* case of discrimination because it did not take any adverse action against him. According to Genesco, Izzo dropped his keys and left as soon as Clark said he planned to initiate a formal disciplinary proceeding. Therefore, Genesco claims, Izzo quit rather than having been fired. According to Izzo, however, he was escorted out when he refused to admit to drug or alcohol abuse. Whether

---

[1] Genesco argues that under Jones v. City of Boston 752 F.3d 38 (1st Cir. 2014), individuals erroneously regarded as drug addicts are protected under the ADA, but individuals erroneously regarded as current drug users are not. By its specific language, however, the ADA protects those who are "erroneously regarded as engaging in [the illegal use of drugs], but [are] not engaging in such use." 42 U.S.C. § 12114(b)(3). In Jones, the plaintiffs claimed they were fired "on account of an erroneous perception that they were drug addicts." 752 F.3d at 58. The First Circuit found that on the record, no jury could reasonably conclude that defendants were motivated by a perception, erroneous or not, that plaintiffs were addicted to drugs, as the evidence demonstrated that they were concerned about drug use rather than addiction. Id. at 58-59. Under Jones and pursuant to the clear language of the statute itself, recovered or recovering drug addicts and individuals "regarded as" drug addicts are protected under the ADA, 42 U.S.C. §§ 12114(b)(1), (2); 42 U.S.C. § 12102(1)(c). This is in addition to individuals erroneously regarded as currently engaging in illegal drug use, who are also protected under the ADA, as distinct from people currently using drugs who are not similarly protected. 42 U.S.C. § 12114(b)(3).

[2] Izzo also alleges that he was erroneously perceived as an alcoholic. [ECF No. 1 ¶ 18]. "There is no question that alcoholism is an impairment for purposes of the first prong of analysis under the ADA." Bailey v. Georgia-Pac. Corp., 306 F.3d 1162, 1167 (1st Cir. 2002). Genesco does not contest this in its motion.

Izzo quit or was fired, and thus whether the Defendant took an adverse action, is a question of fact for a trial jury to resolve. As the MCAD found, and this Court now confirms: "Whether Complainant voluntarily resigned after being confronted with his alleged performance deficiencies or whether Respondent terminated Complainant because they perceived him as a disabled person is an issue in dispute more suitable for a fact finder to determine." [ECF No. 35-3 at 6].

Genesco does not challenge any other aspects of Izzo's *prima facie* case. Therefore, drawing all inferences in Izzo's favor for purposes of the motion for summary judgment, the Court finds that Plaintiff has established a *prima facie* case of discrimination under the ADA. "The burden for establishing a prima facie case is not onerous." Douglas v. J. Penney Co., 474 F.3d 10, 14 (1st Cir. 2007). Based on the record now before the Court, Izzo has met this burden.

### 2. Step 2: Legitimate Non-Discriminatory Reason

Next, because Izzo has established a *prima facie* case of discrimination for purposes of the summary judgment motion, the burden shifts to Genesco to provide a legitimate, nondiscriminatory reason for terminating Izzo. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). The record contains substantial evidence that Izzo was performing poorly at work prior to his termination. From April through August 2012, the Braintree store, managed by Izzo, received poor reviews; its sales were below-target and numerous other aspects of its operations were also deficient. Izzo was told about these deficiencies and did not challenge them. Based on this evidence, Genesco has provided a legitimate, nondiscriminatory reason for terminating Izzo.

### 3. Step 3: Pretext

Lastly, the burden shifts back to Izzo to show that the employer's stated non-discriminatory reason was pretextual. "'To defeat a motion for summary judgment, Plaintiff need only show that her ability to meet her burden of proving pretext 'turns on a genuine issue of material fact.'" Weeks v. Lower Pioneer Valley Educ. Collaborative, No. 14-30097-MGM, 2016 WL 696096, at *9 (D. Mass. Feb. 19, 2016) (quoting Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 23 (1st Cir. 2015)). Because it is difficult for an employee to determine the legitimacy of its employer's motive, "where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious about granting the employer's motion for summary judgment." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998) (internal quotation omitted). Still, "if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate even where intent is an issue." Id.

Genesco asserts that on the present record, Plaintiff cannot provide *any* evidence of pretext that disproves Defendant's legitimate, nondiscriminatory grounds for termination. [ECF No. 32 at 23]. In making this assertion, Genesco ignores the disputed facts surrounding the August 30 meeting. Though it is undisputed that Izzo's work performance was lacking leading up to the meeting, it is disputed whether this was the reason he was let go. According to Izzo's version of events, he was fired immediately after he refused to admit to a substance abuse problem. If a jury were to find Izzo's testimony credible, it could find Genesco's alleged motive illegitimate and pretextual. See Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). ("It is well-settled that a judge must not engage in making credibility determinations or weighing the evidence at the summary judgment stage.").

For the foregoing reasons, Izzo is not entitled to summary judgment on Count I. Taking the evidence in the light most favorable to Izzo, he has established a *prima facie* case of employment discrimination, and created a triable issue of fact as to whether Genesco's stated reason for terminating him was pretextual.

### b. Count II: Mass. Gen. Law ch. 151B

An employment discrimination claim under Chapter 151B is assessed under the same burden-shifting framework employed above: plaintiff bears the initial burden of establishing its *prima facie* case; the burden then shifts to the defendant to articulate non-discriminatory reasons for its actions; and last, the burden shifts back to the plaintiff to show that the non-discriminatory reasons are pretextual. Murray v. Warren Pumps, LLC, No. CIV.A. 11-40176-DPW, 2013 WL 5202693, at *3 (D. Mass. Sept. 12, 2013). Within this general framework, however, there are certain areas where state and federal law diverge, one of which is significant here.

Specifically, in 2008, the ADA, but not Chapter 151B, was amended to make it easier to bring a "regarded as" discrimination claim. Id. at *4-5. Prior to the amendment, courts had taken a narrow view of "regarded as" discrimination, requiring proof that the employer regarded plaintiff as having a disability that substantially limited a major life activity. This was a significant hurdle. Proof that an individual was regarded as unable to perform a particular job (i.e. his current job) did not constitute proof of a substantial limitation in a major life activity; instead, the claimant needed to show that he was regarded as "significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities." Sullivan, 358 F.3d at 117 (internal quotations omitted) (emphasis in original).

Through the ADA Amendment Act ("ADAAA"), Congress stripped this requirement. Now, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added).

This is not the law in Massachusetts, where the older, more demanding standard still applies. In 2003, consistent with the federal law at that time, the SJC held in City of New Bedford v. Massachusetts Comm'n Against Discrimination, 440 Mass. 450 (2003), that to be regarded as handicapped under Chapter 151B,[3] a plaintiff must show that he was regarded as having an impairment that substantially limited a major life activity. The SJC set forth a three-step analysis for determining whether a plaintiff has demonstrated that he is, or is regarded as, handicapped within the meaning of Chapter 151B: "First, we consider whether a plaintiff's condition, actual or perceived, constitutes a mental or physical 'impairment.' Second, we determine whether the life activity curtailed constitutes a 'major' life activity as defined in G.L. c. 151B, § 1(20), and its accompanying regulations. Third, tying the two statutory phrases together, we ask whether the impairment *substantially limited* the major life activity." Id. at 463 (internal quotations and citations omitted) (emphasis in original). In City of Bedford, a police officer argued that he was perceived as having a mental impairment that substantially limited his major life activity of working. The SJC rejected his claim, finding that an employee is regarded as having a substantial limitation on the major life activity of working only if his perceived

---

[3] "[T]he ADA uses the term 'disability,' and Chapter 151B uses the term 'handicap.'" Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 n.2 (1st Cir. 2010).

impairment "prevents or significantly restricts the individual from performing *a class of jobs or a broad range of jobs* in various classes." Id. at 464 (emphasis in original). The officer was not handicapped, since he was only perceived as unable to perform a particular aspect of a particular job. Id. at 466.

The statutory language the SJC relied on in City of New Bedford has not been amended nor has the case law evolved, and therefore, the more demanding pre-ADAAA standard applies to a Chapter 151B "regarded as" employment discrimination claim. See Murray, 2013 WL 5202693, at *6 (noting that "[p]re–ADAAA federal caselaw remains particularly analogous to the M.G.L. 151B analysis because Massachusetts has not amended M.G.L. 151B in the same way that Congress amended the ADA"); Merricks v. Savers, Inc., No. CIV.A. 11-10956-DJC, 2012 WL 32579, at *8 (D. Mass. Jan. 6, 2012) (dismissing Chapter 151B claim because plaintiff did not demonstrate that employer regarded her as substantially limited in the major life activity of working); Boston Police Dep't v. Kavaleski, No. SUCV200904978C, 2014 WL 5422562, at *7 (Mass. Super. Aug. 15, 2014) (noting that City of New Bedford "remains governing law," even after ADAAA); but see Gil v. Vortex, LLC, 697 F. Supp. 2d 234, 239 (D. Mass. 2010) ("The court is . . . confident that the Supreme Judicial Court (SJC) would apply the same revised standard in interpreting the term disability for purposes of Chapter 151B.").

Izzo contends that even under the more-demanding standard, his Chapter 151B claim survives, because he has shown that he was regarded as substantially limited in the exercise of the major life activity of working. Izzo argues that "Mr. Clark's view that Mr. Izzo's impairment was so severe that he could not even be trusted to return to the store, certainly implies that Mr. Clark would have also considered Mr. Izzo unfit for any other kind of employment." [ECF No. 37 at 10]. Even crediting Izzo's version of events, this inference is a stretch too far. "Proof that

14

an individual cannot perform a single, particular job does not constitute [proof of] a substantial limitation in the major life activity of working." Sullivan, 358 F.3d at 116 (internal quotations omitted); see also Bailey v. Georgia-Pac. Corp., 306 F.3d 1162, 1170 (1st Cir. 2002) ("Since Bailey adduces no evidence that his employer thought he was unfit for either a class or a broad range of jobs, his 'regarded as' claim of disability must fail."). That Clark would not allow Izzo back to the store and his current job indicates only that Clark may have believed Izzo unfit for his current job, but does not also indicate that Clark perceived Izzo as so disabled that he was unfit for a broad range of jobs. Accordingly, Izzo has not presented evidence from which a reasonable jury could find Izzo handicapped under Chapter 151B, and his state law claim is therefore dismissed.

## IV. CONCLUSION

For the foregoing reasons, Genesco's Motion for Summary Judgment is GRANTED IN PART. Genesco is entitled to summary judgment on Count II of Izzo's complaint, alleging discrimination under Mass. Gen. Law. ch. 151B, but not Count I, alleging discrimination under the Americans with Disabilities Act.

**So Ordered.**

Dated: March 22, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE